**SO ORDERED**

**SIGNED this 30 day of April, 2025.**

**Pamela W. McAfee**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TRI-CITY SERVICE LLC,** | ) | **Case No. 24-04063-5-PWM** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**<u>ORDER CONFIRMING PLAN</u>**

The Plan of Reorganization for Small Business under Chapter 11 of the Bankruptcy Code filed by the Debtor on February 19, 2025, D.E. 63, (herein the "Plan") having been transmitted to creditors and Confirmation of the Plan having been conducted in the United States Bankruptcy Court in Raleigh, North Carolina on April 29, 2025; and

The Court being advised as to the acceptance by classes of impaired claims of such Plan, and having considered the statements and evidence presented by counsel for the Debtor, the Subchapter V Trustee and counsel for the Bankruptcy Administrator;

**NOW, THEREFORE,** the Court makes the following findings of fact and conclusions of law:

The Plan complies with the provisions of Chapter 11 of the Bankruptcy Code including, but not limited to, the confirmation requirements of Section 1129(a), except Section 1129(a)(8) as every impaired class has not accepted the Plan.

The Plan does not discriminate unfairly, and is fair and equitable, with respect to each of the impaired classes that have not accepted the Plan. The requirements of Section 1191(b) are, therefore, satisfied.

It having been determined after hearing on notice that the applicable requirements for confirmation set forth in Section 1129 of the Bankruptcy Code have been satisfied;

**IT IS ORDERED THAT:**

1. The Plan is CONFIRMED under the provisions of Section 1191(b), subject to the modifications set forth in the attached **Exhibit A** of this Order.

2. To the extent any language in the Plan is inconsistent with the provisions of this Order, including but not limited to the language found in Section I of the Plan, the provisions of this Order shall govern.

3. The Court further finds that the Plan provides for appropriate remedies to protect the holders of the claims or interests if the payments are not made. The property of the Debtor will not vest upon confirmation, subject to further order of this Court, and therefore, the creditors are protected by this Court's authority upon default. After vesting of the property, the Plan also provides a mechanism for an appropriate release for the creditors from the plan injunction upon default.

4. The Debtor shall file Post-Confirmation Reports with the Clerk of Court pursuant to Section 1106(a)(7) with a copy served upon the Bankruptcy Administrator. The first report shall be due on the earliest of April 30, July 31, October 31 or January 31, in the Calendar year in which the Plan is confirmed. The Debtor shall file subsequent reports at the end of every succeeding quarter (April 30, July 31, October 31 or January 31), until the Plan is substantially consummated. Quarterly Reports shall reflect any progress made in consummating the Plan during the period covered by the report. Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator.

5. Pursuant to Section 1183(c), the Trustee's services shall terminate when the Plan has been substantially consummated. The Trustee shall make a final report and file a final account of the administration of the estate within seven (7) days of the notice filed under Section 1183(c)(2). The Debtor shall make all payments required under the Plan, as confirmed, as opposed to the Trustee. The Trustee shall not have any obligation to disburse payments pursuant to the Plan The Trustee's requirements pursuant to Sections 1183(b)(1) and 704(a)(9), of making a final report and filing a final account of the administration of the estate, may be satisfied by filing a report of no distribution.

6. Within thirty (30) days of substantial consummation of the Plan, as defined by Section 1101(2), the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each class of creditor, and a motion for the entry of a Final Decree pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure. If there are any adversary proceedings pending at the time the motion for a final decree is filed, a final decree can be entered, but closing of the bankruptcy case will be deferred until the adversary proceedings are resolved.

7. The Court shall retain jurisdiction pursuant to and for the purposes of Sections

105(a) and 1193 of the Bankruptcy Code and for, without limitation, the purpose of determining all applications, adversary proceedings and litigated matters pending on the Confirmation Date or permitted to be filed or commenced pursuant to the Plan.

8. The Debtor shall pay to the Clerk, United States Bankruptcy Court, the sum of $0.00 for court costs. Since the Debtor elected to be treated as a debtor under subchapter V of Chapter 11, there will be no quarterly fees due or payable.

9. The Debtor shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a Certificate of Service with the Clerk.

**END OF DOCUMENT**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TRI-CITY SERVICE LLC,** | ) | **Case No. 24-04063-5-PWM** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

# ADDENDUM TO PLAN OF REORGANIZATION

February 19, 2024

# TABLE OF CONTENTS


I. Background ....4

A. – Description and History of the Debtor's Business ....4
B. – Liquidation Analysis ....4
C. – Ability to Make Future Plan Payments and Operate Without Further Reorganization ....5

II. Definitions and Rules of Construction ....5

III. Summary of Plan ....9

IV. Classification of Claims and Interests ....9

A. – Summary of Classification ....9
B. – Classification of Claims and Interests Generally ....9
C. – Index of Classes ....9

V. Treatment of Administrative and Priority Tax Claims ....10

A. – Administrative Claims ....10
B. – Priority Tax Claims ....10

VI. Treatment of Claims and Interests Under the Plan ....10

A. Class 1 – Priority Non-Tax Claims ....11
B. Class 2 – Fifth Third Bank ....11
C. Class 3 – U.S. Small Business Administration ....11
D. Class 4 – Credibly of Arizona, LLC ....12
E. Class 5 – L&W Supply Corporation ....12
F. Class 6 – Marlin Leasing Corp. ....12
G. Class 7 – TowneBank ....13
H. Class 8 – AmeriCredit Financial Services d/b/a GM Financial ....13
I. Class 9 – Best Supply, Inc. ....13
J. Class 10 – General Unsecured Claims ....14
K. Class 11 – Equity Security Holders ....14

VII. Allowance and Disallowance of Claims ....14

A. – Claims Subject to Objection ....14
B. – Claims Objection Bar Date ....14
C. – No Distributions on Disputed Claims ....14

VIII. Provisions for Executory Contracts and Unexpired Leases ....15

IX. Means for Implementation and Execution of the Plan ........................................15

X. Preservation of Claims and Avoidance Actions ................................................17

XI. Provisions Governing Distributions & Payments Under the Plan .......................18

XII. Acceptance or Rejection of Plan: Effect of Rejection by an Impaired Class .......19

XIII. “Cramdown” for Impaired Creditors Not Accepting the Plan .............................20

XIV. Effect of Confirmation ........................................................................................20

XV. Discharge ............................................................................................................21

XVI. Application of Plan Payments .............................................................................21

XVII. Retention of Jurisdiction ......................................................................................22

XVIII. General Provisions ..............................................................................................23

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **TRI-CITY SERVICE LLC,** | ) | **Case No. 24-04063-5-PWM** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**ADDENDUM TO PLAN OF REORGANIZATION FILED FEBRUARY 19, 2025**

Pursuant to the provisions of Sections 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 and 1190), the Debtor, Tri-City Service, LLC, hereby submits the following Addendum to Plan of Reorganization ("Plan"):

## ARTICLE I
## BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor ("Debtor") is a North Carolina limited liability company that provides subcontracting services including painting, drywall, electrical and other construction services to both residential and commercial construction projects across North and South Carolina. The Debtor has been operating since 2002. The Debtor's principal, Yehia S. Hussein, filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on January 10, 2025, Case No. 25-00113-5-PWM.

The Debtor's secured creditors include Fifth Third Bank ("Fifth Third") and the U.S. Small Business Administration (the "SBA"), each of which assert a blanket lien on the Debtor's assets. L&W Supply Corporation is a judgment creditor of the Debtor. The Debtor is also indebted to Marlin Leasing Corporation pursuant to an equipment finance agreement secured by a first-priority lien on the Debtor's (2) Snorkel Booms with Telescoping DSIs. The Debtor is indebted to TowneBank ("TowneBank") pursuant to a promissory note secured by a first-priority lien on the Debtor's 2023 Chevy Suburban, and AmeriCredit Financial Services d/b/a GM Financial ("GM Financial") pursuant to a promissory note secured by a first-priority lien on the Debtor's 2024 Chevy Silverado. In addition, the Debtor is indebted to Best Supply, Inc. ("Best Supply") related to certain construction contracts. Best Supply asserts a lien upon funds pursuant to N.C.G.S Chapter 44A and initiated a related state court lawsuit against the Debtor, as set forth more particularly below. The Debtor's creditors also include a number of unsecured creditors related to various business debts.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and interest holders who do not

accept the Plan will receive at least as much under the Plan as such claim and interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit 1** (the "Liquidation Analysis"). As shown in the Liquidation Analysis, the Debtor projects that unsecured creditors would receive no distribution in a Chapter 7 liquidation. Because the Plan proposes to pay unsecured creditors more than they would receive in a Chapter 7 liquidation, the liquidation test is satisfied.

**C. Ability to Make Plan Payments and Operate Without Further Reorganization**

The Debtor intends to fund the Plan from cash on hand and through continued business revenue. A projection of monthly income and expenses is attached hereto as **Exhibit 2.**

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

Unless the context requires otherwise, the definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102, and the additional terms and rules of construction set forth herein, shall apply for purposes of this Plan:

1. "ADMINISTRATIVE CLAIM" or "ADMINISTRATIVE EXPENSE CLAIM" shall mean any Claim allowed under 11 U.S.C. § 503(b) and entitled to priority pursuant to 11 U.S.C. § 507(a)(2) that has not been paid by the Debtor.

2. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or, by order of the Court, was not required to be filed; or (b) any Claim that has been listed in the Debtor's Schedules as liquidated in an amount and not disputed or contingent; and in each case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Article VII below, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Court, but only to the extent so allowed; or (c) the treatment of a claim as set forth in the Plan.

3. "BANKRUPTCY CAUSES OF ACTION" shall mean any claim or cause of action which may be asserted by the Debtor or Debtor-in-Possession under 11 U.S.C. §§ 510(c), 541, 542, 543, 544, 546, 547, 548, 549, 550 or 553.

4. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§ ___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

5. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as well as the Local Bankruptcy Rules for the United States Bankruptcy Court for the Middle District of North Carolina, as amended from time to time, as applicable to Chapter 11 cases.

6. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court. Claim shall also mean the treatment in the Plan to be provided to a creditor. If a conflict arises between a filed claim and the treatment of the claim set forth in the Plan, the treatment set forth in the Plan shall control.

7. "CLAIMS BAR DATE" shall mean, as applicable, (a) March 17, 2025 for nongovernmental creditors, or (b) such other period of limitation as may be specifically fixed by an Order of the Court for the filing of certain Claims.

8. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

9. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1191.

10. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1191.

11. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

12. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

13. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

14. "DEBTOR" shall mean Tri-City Service, LLC.

15. "DISALLOWED" shall mean, with respect to any Claim, a Claim (i) proof of which is not filed prior to the applicable Claims Bar Date (as defined herein), or (ii) which is not listed on the Debtor's Schedules, or (iii) which is listed on the Debtor's Schedules as disputed, contingent, or unliquidated, or (iv) which is listed on the Debtor's Schedules as having a value of $0.00. Any Disallowed Claim shall not be entitled to any distribution under this Plan on account of such Claim, and such Disallowed Claim shall be disregarded for all purposes.

16. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent, unliquidated, or for an "unknown" or $0.00 amount, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order. For the avoidance of doubt, if no proof of Claim has been filed by the applicable Claims Bar Date and the Claim (i) is not listed on the Debtor's Schedules, or (ii) has been or is hereafter listed on the Debtor's Schedules as disputed, contingent, unliquidated, or having a value of $0.00, then such Claim shall be Disallowed and shall

be disregarded for all purposes.

17. "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Plan.

18. "EFFECTIVE DATE" shall be the date that is the later of fifteen (15) days following entry of the Confirmation Order or five (5) days after the resolution of claim objections, if any.

19. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expired, or (b) any appeal that has been time filed has been dismissed or otherwise finally determined.

21. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim. General Unsecured Claim shall not include claims that were not filed by creditors with the claim of that creditor being listed in the Debtor's Schedules as disputed. General Unsecured Claim shall include under-secured portions of a secured claim as may be specified in the Plan.

22. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

23. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, November 21, 2024.

24. "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

26. "PRIORITY TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

27. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28. "REORGANIZED DEBTOR" shall mean the Debtor, as reorganized under the

terms of this Plan and re-vested with the property which was formerly property of the estate, as provided by 11 U.S.C. § 1141(b).

29. "SECURED CLAIM" shall mean a Claim (a) secured by a lien, security interest, or other encumbrance on property in which the estate of the Debtor against which the Claim is asserted has an interest, which lien, security interest, or other encumbrance is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order entered by the Court, to the extent of the value of the Creditor's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a) and not subject to subordination; (b) subject to setoff pursuant to 11 U.S.C. § 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to the Plan as a Secured Claim. Secured Claim does not include that portion of the Creditor's Claim exceeding the value of the collateral or the Creditor's interest in the Debtor's interest in the collateral and does not include the value of any avoidable portion of such lien.

30. "SECURED CREDITOR" shall mean a Creditor that holds a Secured Claim against the Debtor or the Debtor's property. The Claim of such Creditor exceeding the value of the collateral, or exceeding the Creditor's interest in the Debtor's interest in the collateral, and the Claim of such Creditor to the extent of the present amount of any avoidable lien, shall be an Unsecured Claim.

31. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

32. "TRUSTEE" shall mean the Subchapter V trustee appointed in this case pursuant to 11 U.S.C. § 1183(a).

33. "UNIMPAIRED" shall mean any Claim or Interest that is not designated as Impaired.

34. "UNSECURED CLAIM" shall mean the debt or Claim of a Creditor: (a) that is unsecured or is not secured by the Debtor's property, (b) that is secured by a lien or security interest against the Debtor's property, which lien or security interest is invalid, unenforceable, or avoidable due to the provisions of the Bankruptcy Code, the Debtor's exemptions, or for any other reason, (c) the Claim of a Creditor to the extent that the Claim exceeds the value of the collateral held by such Creditor, or the Creditor's interest in the Debtor's interest in the collateral, or (d) the Claim of a Creditor to the extent of the present amount of any invalid, improperly perfected, or avoided lien or any lien which is not immediately enforceable against the Debtor.

## <u>ARTICLE III</u>
## SUMMARY OF PLAN

The Debtor's liabilities will be paid from cash on hand and continued business income according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be established according to the treatment of each respective creditor.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Summary of Classification

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. Claims in Classes that are unimpaired are deemed to have accepted the Plan and are not entitled to vote. Holders of Claims in Classes that are impaired are entitled to vote and are therefore being solicited to vote to accept or reject the Plan.

### B. Classification of Claims and Interests Generally

A Claim or Interest is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled before the Effective Date. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Any Class of Claims that, as of the date of the Confirmation Hearing of the Plan, is not occupied by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes.

### C. Index of Classes

The chart below lists each Class of Creditors, and a detailed description of each Class and its treatment following in Articles V and VI.

| Class No. | Class/Type | Impairment | Voting Rights |
|---|---|---|---|
| N/A | Administrative Claims | N/A | Not entitled to vote |
| N/A | Priority Tax Claims | N/A | Not entitled to vote |
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not entitled to vote |
| Class 2 | Fifth Third Bank | Impaired | Entitled to Vote |
| Class 3 | U.S. Small Business Administration | Unimpaired | Not entitled to vote |
| Class 4 | Credibly of Arizona, LLC | Impaired | Entitled to vote |
| Class 5 | L&W Supply Corporation | Impaired | Entitled to vote |
| Class 6 | Marlin Leasing Corp | Impaired | Entitled to vote |
| Class 7 | TowneBank | Impaired | Entitled to vote |
| Class 8 | AmeriCredit Financial Services d/b/a GM Financial | Impaired | Entitled to vote |

| | | | |
|---|---|---|---|
| Class 9 | Best Supply, Inc | Unimpaired | Not entitled to vote |
| Class 10 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 11 | Equity Interest Holders | Unimpaired | Not entitled to Vote |

## ARTICLE V
## TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A. Administrative Claims

Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan or as otherwise agreed. The Debtor proposes to pay these claims in full from the Debtor's projected disposable income and cash on hand. The Debtor anticipates the only administrative claims will be those of the Debtor's professionals and the Trustee.

EXCEPT FOR COURT APPROVED PROFESSIONALS AND THE TRUSTEE, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN THIRTY (30) DAYS OF THE DATE OF THE CONFIRMATION ORDER. OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE DEBTOR AT ANY TIME.

### B. Priority Tax Claims

To the extent a claim is filed and allowed, the Debtor proposes to pay these claims in full in quarterly installments over a period not exceeding five years from the date of the Order for relief. Quarterly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date and shall include interest at the rate set by Internal Revenue Code Sections 6601 and 6621. The Debtor may elect to pay these claims in full and in cash at any time following the Effective Date. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim. Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.

## ARTICLE VI
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Article V above describes the treatment of Administrative Claims and Priority Tax Claims. For the purposes of this Plan, Holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code, provided that (a) if the Plan is confirmed, recovery will be limited to the amount provided by the Plan; and (b) notwithstanding the classification and treatment of Claims set forth herein, any holder of an Allowed Claim may agree to less favorable treatment than that set forth herein, in which case such holder may be paid in accordance with such agreement:

### A. Class 1- Priority Non-Tax Claims

On the Effective Date, the Holders of Allowed Claims in Class 1 shall receive (a) all amounts to which such Holder is entitled on account of such allowed Claim on the later of (i) the Effective Date or (ii) the date when such allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable treatment as is agreed upon by the Debtor and the Holder of such allowed Priority Non-Tax Claim. The Debtor does not believe there are any claims in this class.

**B. Class 2 – Fifth Third Bank ("Fifth Third")**

1. Description of Class. The Debtor is indebted to Fifth Third Bank pursuant to a Revolving Note dated approximately November 4, 2021, in the original principal amount of $235,000.00 (the "Fifth Third Note"), a security agreement bearing the same date, and a UCC-1 Financing Statement, File No. 20210150364F, filed with the North Carolina Secretary of State on November 5, 2021. On January 9, 2025, Fifth Third filed a secured claim in the amount of $239,979.45.

2. Impairment. This class will be impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation of the Debtor in an amount equal to $261,888.34. Fifth Third shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay Fifth Third's claim over seven (7) years with a five (5) year balloon, with interest accruing at a fixed rate equal to the Secured Overnight Financing Rate ("SOFR") as of the Effective Date, as published by the Federal Reserve Bank of New York. The SOFR as of February 19, 2025 is 4.33%. Monthly payments shall commence on the first (1st) day of the first full month following the Effective Date, in the approximate amount of $3,619.62.

**C. Class 3 – U.S. Small Business Administration ("SBA")**

1. Description of Class. The Debtor is indebted to the U.S. Small Business Administration pursuant to a Note dated approximately July 15, 2020 in the original principal amount of $70,000.00 (the "SBA Note"), and UCC-1 Financing Statement, File No. 20200113555F, filed with the North Carolina Secretary of State on July 25, 2020. On February 10, 2025, the SBA filed a secured claim in the amount of $81,398.97.

2. Impairment. This class will be unimpaired.

3. Treatment. This obligation shall be treated as a fully secured obligation of the Debtor in an amount equal to (i) all outstanding principal and interest due on the Petition Date, plus (ii) any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b), less payments received on a post-petition basis. The SBA shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay the SBA's claim over twenty-five (25) years, with interest accruing at the contract rate. Monthly payments shall commence on the first (1st) day of the first full month following the Effective Date, in the approximate amount of $418.50.

**D. Class 4 – Credibly of Arizona, LLC ("Credibly")**

1. Description of Class. The Debtor is indebted to Credibly pursuant to a Business Loan and Security Agreement dated approximately April 2, 2024, in the original principal amount of $95,000.00. (the "Credibly Agreement"). Credibly filed a UCC-1 Financing Statement, File No. 20230143013M, filed with the North Carolina Secretary of State on November 21, 2023. On or about June 4, 2024, Credibly filed a lawsuit related to the Credibly Agreement against the Debtor and Mr. Hussein in Superior Court for the State of Arizona, Maricopa County, seeking the sum of $121,417.52. That lawsuit resulted in a default judgment.

2. Impairment. This class will be impaired.

3. Treatment. The Debtor asserts that Credibly is an unsecured creditor based upon the value of the assets of the Estate and the senior liens of Fifth Third and the SBA (see Classes 2 and 3) asserted against the Debtor's assets. Accordingly, any claim in this class shall be treated as a general unsecured claim in Class 10 herein. This creditor shall cancel its lien of record within thirty (30) days of the Effective Date or, if no such cancellation is filed, the Debtor shall be allowed to file the cancellation on the creditor's behalf.

**E. Class 5 – L&W Supply Corporation ("L&W")**

1. Description of Class. The Debtor is indebted to L&W pursuant to a consent judgment entered in Wake County Superior Court Case No. 24CV014270-910 on or about May 8, 2024 (the "L&W Judgment). The Debtor partially satisfied the L&W Judgment, and as of the petition date approximately $606,398.52 remained due and owing to L&W. On January 3, 2024, L&W filed a UCC-1 Financing Statement, File No. 20240001127M, filed with the North Carolina Secretary of State. As of the date of filing this Plan, L&W has not filed a claim.

2. Impairment. This class will be impaired.

3. Treatment. The Debtor asserts that L&W is an unsecured creditor based upon the value of the assets of the Estate and the senior liens of Fifth Third and the SBA (see Classes 2 and 3) asserted against the Debtor's assets. Accordingly, any claim in this class shall be treated as a general unsecured claim in Class 10 herein. This creditor shall cancel its lien of record within thirty (30) days of the Effective Date or, if no such cancellation is filed, the Debtor shall be allowed to file the cancellation on the creditor's behalf.

**F. Class 6 – Marlin Leasing Corporation ("Marlin")**

1. Description of Class. The Debtor is indebted to Marlin pursuant to an equipment finance agreement dated March 11, 2022 (the "Marlin Agreement"). Marlin filed a UCC-1 Financing Statement, File No. 20220032703B, with the North Carolina Secretary of State on March 11, 2022. The Marlin Agreement is secured by a properly perfected first-priority lien on the Debtor's two (2) Snorkel Boom Telescoping DSIs. On December 4, 2024, Marlin filed a claim that is secured in part, in the amount of $24,500.00, and unsecured in part, in the amount of

$13,022.51

2. Impairment. This class will be impaired.

3. Treatment. This claim shall be treated as a secured obligation of the Debtor in the amount of $24,500.00. Marlin shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay Marlin's claim over four (4) years, with interest accruing at the contractual rate of 5.90%. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $574.26.

The unsecured portion of Marlin's claim shall be treated as a general unsecured claim in Class 10 herein.

### G. Class 7 – TowneBank ("TowneBank")

1. Description of Class. The Debtor is indebted to TowneBank pursuant to a promissory note (the "TowneBank Note"). The TowneBank Note is secured by a properly perfected first-priority lien on the Debtor's 2023 Chevrolet Suburban. TowneBank has filed a secured claim for such vehicle, Claim No. 8, in the amount of $39,498.48.

2. Impairment. This class will be impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation of the Debtor in an amount equal to (i) all outstanding principal and interest due on the Petition Date, plus (ii) any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b), less payments received on a post-petition basis. TowneBank shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay TowneBank's claim over five (5) years, with interest accruing at 9.0% from the petition date until the secured claim is paid in full. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $819.92.

### H. Class 8 – AmeriCredit Financial Services d/b/a GM Financial ("GM Financial")

1. Description of Class. The Debtor is indebted to GM Financial pursuant to a promissory note (the "GM Financial Note"). The GM Financial Note is secured by a properly perfected first-priority lien on the Debtor's 2023 Chevrolet Silverado. On December 17, 2024, GM Financial filed a secured claim, Claim No. 7, in the amount of $75,029.69.

2. Impairment. This class will be impaired.

3. Treatment. This claim shall be treated as a secured obligation of the Debtor in the amount of $65,550.00. The balance of GM Financial's claim shall be treated as a general unsecured claim in Class 10 herein. GM Financial shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall

amortize and pay GM Financial's claim over five (5) years, with interest accruing at 7.50%. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $1,313.49.

**I. <u>Class 9 – Best Supply, Inc. ("Best Supply")</u>**

1. <u>Description of Class</u>. Best Supply asserts a claim of lien on real property and claim of lien upon funds pursuant to pursuant to, *inter alia*, N.C.G.S. § 44A-22, indexed as Wake County, North Carolina File Nos. 23M005292-910 and 23M005293-910 (the "Best Supply Liens"). The Best Supply Liens are related to certain sums owing by the Debtor to Best Supply for goods and materials supplied for a construction project located at or near 905 Lakeford Drive, Cary, NC 27519, and commonly identified as "Twin Lakes Apartments" or "Ashby at Twin Lakes" (the "Twin Lakes Project").

2. <u>Impairment.</u> This class will be unimpaired.

3. <u>Treatment</u>. The Debtor acknowledges Best Supply's Chapter 44A lien rights and its right to receive payment related to the Best Supply Liens. To the extent Best Supply asserts a deficiency claim after payment is remitted to Best Supply related to the Best Supply Liens, such deficiency claim will be treated as a Class 10 Claim.

**J. <u>Class 10 – General Unsecured Claims</u>**

1. <u>Description of Class</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's Schedules or as otherwise approved by the Court.

2. <u>Impairment</u>. This class will be impaired.

3. <u>Treatment</u>. The Debtor shall make distributions to members of this class on a *pro rata* basis. The Debtor shall pay a total of $150,000.00 over three (3) years, payable in quarterly installments. Payments shall commence on the first day of the first full calendar quarter following the Effective Date and continue thereafter quarterly for a term of three (3) years.

**K. <u>Class 11– Equity Security Holders</u>**

(1) <u>Classification.</u> This class consists of the sole shareholder of the Debtor as follows:

Yehia Hussein – 100% shareholder interest

(2) <u>Impairment</u>. This class will be unimpaired.

(3) <u>Treatment</u>. The equity security holder listed above shall retain his ownership interest upon confirmation of the Debtor's Plan.

**<u>ARTICLE VII</u>**

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A. Claims Subject to Objection

All Claims and security interests listed herein are, unless expressly accepted or consented to herein, subject to objections by the Debtor or any party in interest. All Disputed Claims shall be litigated to final order, settled, or withdrawn. The Debtor shall have the authority to settle Disputed Claims without approval of the Court.

### B. Claims Objection Bar Date

Unless a different date is set by order of the Court, all objections to Claims shall be filed by the later of (i) 30 days after the Confirmation Date, (ii) 30 days after a timely proof of claim is filed, or (iii) such later date as the Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing.

### C. No Distributions on Disputed Claims

Except as may be otherwise agreed with respect to any Disputed Claim, no distribution under this Plan shall be made with respect to any portion of a Disputed Claim until such Disputed Claim shall have become an Allowed Claim or settled by the Debtor. Notwithstanding any date specified earlier in this Plan for the commencement of payments under this Plan on any particular Claim, if an objection to a Claim has been filed but not resolved at the time distribution on such Claim would otherwise commence if such Claim were an Allowed Claim, the first payment on such Claim under this Plan shall commence on the first day of the second month following the allowance of the Claim by Final Order, withdrawal of objection, or other resolution or compromise. If commencement of payments on any Claim are delayed under this Article, any payments subsequent to the first payment otherwise due under this Plan before the delayed commencement date shall, at the option of the Debtor in its sole discretion, be deferred to the end of the payment term and the payment term shall be extended so as to allow such payment to be made on the same periodic basis as the immediately preceding payments under the Plan.

## ARTICLE VIII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor specifically assumes the lease of certain office space located at 1411 Diggs Drive, Suite G, Raleigh, NC 27603, as set forth more particularly in the Debtor's Schedule G. The Debtor also expressly assumes all active construction contracts to which it is a party.

Except as specified herein, all pre-petition contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected. Any party whose contract or lease has been rejected shall have thirty (30) days from the Effective Date to file a proof of claim for rejection damages.

## ARTICLE IX
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

A. The Debtor shall make payments under the Plan from cash on hand and his projected disposable income. The Debtor shall deposit all proceeds into a designated bank account and disburse all funds in accordance with the terms of this Plan. The Subchapter V Trustee shall make no distributions under the terms of the Plan.

B. Distribution of Proceeds from Bankruptcy Causes of Action. Funds received or recovered from any Bankruptcy Causes of Action shall be distributed in accordance with the Plan, after payment of all applicable costs associated with the pursuit of such avoidance action(s), which shall be paid in full before the distribution of such proceeds. At this time and after investigation of the same, the Debtor does not contemplate filing any such actions.

C. De Minimis Distributions. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an Allowed Claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D. Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and there will be no attempt to make any further distribution to such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

E. The Debtor will execute and deliver all documentation to the Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

F. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

G. Except as expressly stated in the Plan or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Bankruptcy Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

H. Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the

Debtor retains his rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

I. Administrative Claims unpaid on the Effective Date will be paid from cash on hand.

J. All objections to claims, fee applications (with the exception of applications under 11 U.S.C. § 506(c), fee applications by counsel for the Debtor, and fee applications by the Trustee), will be filed with the Court within thirty (30) days of the Confirmation Date; provided however, that the Debtor retains the right to extend this deadline upon a showing of cause, and the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time. The statute of limitations of any and all Bankruptcy Causes of Action, and actions in State or Federal Court, not hereinbefore filed, shall be governed by their respective statutes of limitations, 11 U.S.C. § 108(a)(2), or 11 U.S.C. § 546(a)(1)(A), whichever deadline shall be later.

K. Revesting of Assets. The revesting of assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan.

L. Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M. Authority of the Debtor. The Debtor shall have the authority to implement any term or provisions under this Plan. To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority to carry out any and all acts necessary to fulfill the terms of the Plan.

N. The Debtor shall file Post-Confirmation Reports with the Clerk of Court pursuant to § 1187(b) with a copy served upon the Bankruptcy Administrator and Subchapter V Trustee. The first report shall be due on the earliest of January 30, April 30, July 30, or October 31, in the calendar year in which this Plan is confirmed. The Debtor shall file subsequent reports at the end of every succeeding quarter (April 30, July 30, October 31, and January 30), until the Plan is substantially consummated. Such quarterly reports shall reflect any progress made in consummating the Plan during the period covered by the report. Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator.

O. Within fourteen (14) days of substantial consummation of the Plan, as defined by § 1101(2), the Debtor shall file with the Court and serve upon the Trustee, the Bankruptcy Administrator, and all parties in interest notice of such substantial consummation in accordance with 11 U.S.C. § 1183(c)(2). Upon the filing of the notice of substantial consummation, the service of the Trustee shall terminate pursuant to 11 U.S.C. § 1183(c)(1) and the Trustee shall make a final

report and file a final account of the administration of the estate within seven (7) days of the notice filed under § 1183(c)(2). Within thirty (30) days of substantial consummation, the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each Class of creditors, and a motion for the entry of a Final Decree pursuant to Bankruptcy Rule 3022.

## ARTICLE X
## PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A. Preservation of Claims and Avoidance Actions Generally. Notwithstanding anything to the contrary in the Plan, the provisions of the Plan and/or Confirmation Order are not intended to have, and shall not have, any *res judicata* or collateral estoppel effect with respect to any Bankruptcy Causes of Action that the Debtor may assert, regardless of whether and to what extent such Bankruptcy Causes of Action are specifically described in the Plan. Unless any Bankruptcy Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such Bankruptcy Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such Bankruptcy Causes of Action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, without limitation, all pre-petition claims and any and all post-petition claims that the Debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of the Court, including all rights to assert and pursue any Bankruptcy Causes of Action. Finally, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

B. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to §§ 510(c), 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the estate pursuant to § 551 and applicable case law. All litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries shall be treated as an Administrative Claim under Article V above.

C. Preservation of § 506(c) Claims. Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## ARTICLE XI
## PROVISIONS GOVERNING DISTRIBUTIONS & PAYMENTS UNDER THE PLAN

A. Payments By Debtor. The Debtor shall make all payments to creditors under the Plan, regardless of whether the Plan is confirmed pursuant to 11 U.S.C §1191(a) or §1191(b). The Subchapter V Trustee shall make no distributions under the terms of the Plan.

B. Delivery of Distributions in General. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, then (iii) at the addresses reflected in the Debtor's schedules of liabilities.

C. Cure Period. The failure by Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes. Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## ARTICLE XII
## ACCEPTANCE OR REJECTION OF PLAN: EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. Each Impaired Class Entitled to Vote Separately. Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. Acceptance by a Class of Creditors. Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two- thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. Claimants Entitled to Vote. Holders of Impaired Claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's Schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's Schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018; or

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. Confirmation Hearing. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. Acceptances Necessary to Confirm the Plan. At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. Confirmation of Plan Without Necessary Acceptances. Section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired Classes. In order to be confirmed without the requisite number of acceptances of each Impaired class, the Court must find that at least one Impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such Impaired class. In the event that any Impaired class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Article XIII herein, for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

## ARTICLE XIII
## "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors Impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are Impaired under the Plan and that the Court confirm the Plan without such acceptances by the said Impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any Secured Creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the Confirmation Hearing.

## ARTICLE XIV
## EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, confirmation of the Plan vests all assets and property of the estate in the Reorganized Debtor.

B. Injunction. From and after the Confirmation Date, except as otherwise provided in Sections 1141(d)(3), 1192, the Plan, or the Confirmation Order, all holders of "Claims" (including without limitation Secured Claims, General Unsecured Claims, all Priority Claims and any other claim, equity interest, or other debt or liability) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Debtor's assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Debtor's assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan, the Plan does not release or waive any claims the Debtor may have against any party in interest.

## ARTICLE XV
## DISCHARGE

A. Consensual Confirmation Under § 1191(a). As § 1141(d)(5) does not apply to a case under Subchapter V, see § 1181(a), if the Plan is confirmed consensually with the acceptance of all Impaired Classes, then upon entry of the Confirmation Order the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to § 1141(d)(1)(A) of the Bankruptcy Code. Notwithstanding the foregoing, a discharge under § 1141(d) does not discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code.

B. Non-Consensual Confirmation Under § 1191(b). If the Plan is confirmed non-consensually without the acceptance of all Impaired Classes, confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due to the unsecured creditors, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will file a motion for entry of discharge. Said Motion will be noticed to all interested parties, and all parties shall have the right to file timely objections with the Court. A hearing will be held before the Court with regards to any such motion for entry of discharge order.

Upon granting of such a discharge, the Debtor will be discharged from any debt that arose before confirmation of this Plan, whether or not (i) a proof of claim based on such debt is filed or deemed file, (ii) such claim is allowed, or (iii) the holder of such claim has accepted the Plan. Except for the obligations imposed by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release of all (i) claims, liabilities and obligations of the Debtor, (ii) liens on the Debtor's property, whether known or unknown, and (iii) causes of action, directly or derivatively through the Debtor, based on the same subject matter as any claim or liability.

## ARTICLE XVI
## APPLICATION OF PLAN PAYMENTS

A. In the event that a creditor is entitled to costs and/or attorney's fees post-petition under Section 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B. Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## ARTICLE XVII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1193 of the Bankruptcy Code and for, without limitation, the following purposes, inter alia:

1. To determine any and all objections to the allowance of Claims and/or interests;

2. To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

4. To determine all controversies and disputes arising under or in connection with the Plan;

5. To determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date or permitted to be filed or commenced pursuant to this Plan;

6. To hear and determine any and all claims or actions now pending or to be brought by the Debtor pursuant to the Debtor's enforcement and/or avoiding powers retained and authorized under this Plan;

7. To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the estate;

8. To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

9. To determine all disputes regarding property of the Debtor, the Reorganized Debtor, or the estate;

10. To establish and adjust procedures for the orderly administration of the estate;

11. To determine matters that are subject to proceedings duly removed to the Court;

12. To interpret and enforce the Plan and to determine compliance with the terms of the confirmed Plan;

13. To correct any defect or omission, or to reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and

14. To modify this Plan after confirmation.

## ARTICLE XVIII
## GENERAL PROVISIONS

A. Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

B. Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

C. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors and/or assigns of such entity.

D. Captions. The headings and captions contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

E. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as may otherwise be provided in this Plan.

F. Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(*This space left intentionally blank.*)

Respectfully submitted, this the 19th day of February, 2025.

s/ Jason L. Hendren
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012
BENJAMIN E.F.B. WALLER
N.C. State Bar #27680
LYDIA C. STONEY
N.C. State Bar #56697

**HENDREN, REDWINE & MALONE, PLLC**
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
rredwine@hendrenmalone.com
bwaller@hendrenmalone.com
lstoney@hendrenmalone.com
ATTORNEYS FOR THE DEBTOR

s/Yehia Hussein
Yehia Hussein, Manager
Tri-City Service, LLC